UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIMOTHY S., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    Case No. 20-CV-315-CVE-CDL |
| | ) |
| ANDREW M. SAUL, | ) |
| **Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
|     **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The matter has been referred to the undersigned for report and recommendation. For the reasons set forth below, the undersigned **recommends** that the district court **reverse** the Commissioner's decision and **remand** for further proceedings.

**I.  Legal Standards**

    **A.  Standard of Review**

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

### B. Five-Step Agency Process

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id.* § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

At step one, the ALJ determines whether the claimant is engaged in any substantial gainful activity. A person who is performing substantial gainful activity is not disabled.

At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. "This determination is governed by the Secretary's severity regulations, is based on medical factors alone, and, consequently, does not include consideration of such vocational factors as age, education, and work experience." *Williams*, 844 F.2d at 750 (internal citation omitted). A claimant who does not have a severe impairment is not disabled.

At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is disabled. Otherwise, the ALJ proceeds to step four.

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. If the claimant can perform her past relevant work, she is not disabled. Step four is comprised of three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). Second, the ALJ determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC found in phase one allows the claimant to meet the job demands found in phase two. *Winfrey*, 92 F.3d at 1023 (citing

Social Security Ruling (SSR) 86-8). If the claimant can perform her past relevant work, she is not disabled.

The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

## II.  Procedural History

Plaintiff applied for a period of disability and disability benefits under Title II on July 3, 2017. (R. 13, 1257, 1273). He also filed an initial claim for disability under Title XVI on July 18, 2017. (R. 13, 1247, 1284). Plaintiff alleged a disability onset date of June 2, 2015. (R. 13, 1247, 1257). Plaintiff was 48 years old on the alleged disability onset date. (R. 21). He alleged disability due to depression, anxiety, bipolar disorder, a torn rotator cuff in his right shoulder, stroke/cerebrovascular accident, hypertension, high cholesterol, and chronic obstructive pulmonary disease (COPD). (R. 1247). Before his alleged disability, Plaintiff worked as a drill press operator. (R. 21, 1281).

Plaintiff's claim was denied initially and on reconsideration. (*See* R. 13). At both stages, Plaintiff was assessed with a primary medically determinable impairment (MDI) of severe dysfunction of the major joints; a secondary MDI of depressive, bipolar, and related disorders; and "other" MDIs of discogenic/degenerative disorder of the back and anxiety/obsessive compulsive disorder. (R. 1250-1251, 1277, 1288). State agency

reviewing physicians at the initial and reconsideration stages assessed an RFC for light work. (R. 1250, 1261, 1276, 1287).

Plaintiff subsequently requested a hearing before an Administrative Law Judge (ALJ). ALJ Laura Roberts held a hearing on April 11, 2019, at which Plaintiff was represented by counsel. (R. 13, 1233-1243).[1] A vocational expert (VE) also testified at the hearing. *Id.* The ALJ denied benefits in a decision dated July 8, 2019 (R. 10-28). Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on April 29, 2020. (R. 1-4). As a result, the ALJ's decision became the final decision of the Commissioner. (R. 1). Plaintiff then timely appealed to the district court.

### III. The ALJ's Decision

#### A. Step One

At step one, the ALJ found that Plaintiff was insured through September 30, 2020 and that, at the time of the hearing, Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of June 2, 2015. (R. 14).

#### B. Step Two

At step two, the ALJ found that Plaintiff suffers from the severe impairments of bipolar disorder and degenerative disc disease of the cervical and lumbar spine. (R. 16). The ALJ found that Plaintiff has non-severe impairments of status post-right rotator cuff repair, gout, COPD/emphysema, hypertension, and seizures. *Id.* Citing 20 C.F.R. §§ 404.1522 and

---

[1] Plaintiff did not appear personally at the hearing due to his hospitalization with pneumonia at the time; however, Plaintiff waived his right to appear and agreed to have a representative appear on his behalf. (R. 13, 16, 1235-1236).

416.922, the ALJ concluded that Plaintiff's non-severe impairments have not caused more than minimal limitation in Plaintiff's ability to perform basic work activities for 12 consecutive months. *Id*.

### C. Step Three

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal a Listing. (R. 17-18). The ALJ stated that she gave special consideration to Listing 1.04 (disorders of the spine) in relation to Plaintiff's physical impairments. (R. 17).

The ALJ determined that Plaintiff's mental impairments did not meet or equal the criteria of Listings 12.04 and 12.06. *Id*. In explaining this determination, the ALJ addressed the "paragraph B" criteria—the four areas of mental functioning listed at 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ found that Plaintiff has a moderate limitation in each of four areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 17-18). Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ found that the paragraph B criteria were not satisfied. (R. 18).

### D. Step Four

#### 1. RFC

The ALJ found that Plaintiff is limited to light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with certain additional physical and mental limitations. (R. 18). Specifically, Plaintiff

>  should avoid climbing ropes, ladders, or scaffolds. [Plaintiff] can occasionally climb ramps and stairs, stoop, crouch, crawl, kneel, and balance on uneven, moving, or narrow surfaces. [Plaintiff] should avoid overhead reaching bilaterally. [Plaintiff] can understand, remember, and carry out simple tasks with simple instructions in a routine work setting. [Plaintiff's] work should involve few, if any, changes in work processes. [Plaintiff] can have occasional interaction with coworkers, supervisors, and the general public. [Plaintiff's] job should involve no production rate work or strict production quotas.

*Id.* In explaining the RFC determination, the ALJ discussed Plaintiff's subjective statements, medical records, and medical opinion evidence in the record, as summarized in part below.

### 2. Statements Concerning Symptoms

Reviewing Plaintiff's alleged symptoms, the ALJ noted that Plaintiff alleged in his Function Report that he suffers from bipolar disorder, gout, and chronic pain in his right upper extremity. (R. 19 (citing Exhibit 6E)). Plaintiff stated that he could not walk for longer than twenty minutes, lift more than ten pounds, or maintain a grip with his right hand. *Id*. Plaintiff further alleged that he required a cane or walker to ambulate, and that he experienced anxiety attacks and had difficulty getting along with others. *Id*.

The ALJ found that the objective medical evidence "only partially supports the alleged severity of [Plaintiff's] alleged impairments." *Id*. Despite Plaintiff's subjective complaints, Plaintiff reported "a wide range of activities of daily living [ADLs]," including going fishing with friends every few weeks, attending church, managing his personal care without problems, caring for pets, preparing meals, and performing household chores. *Id*.

Plaintiff also reported that he could drive a car, shop in stores, and mow his own yard each week. *Id*.

### 3. Objective Medical Evidence

The ALJ's decision provided a general summary of objective evidence in the medical record, noting that Plaintiff's physical examinations "variously showed instances of elevated blood pressure and spinal somatic dysfunction, tenderness, or decreased range of motion," but also showed normal gait, balance, and reflexes. (R. 19 (citing Exhibits 8F, 9F, 11F, 12F). The ALJ also noted that lumbar spine x-rays on October 8, 2014, showed moderate multilevel degenerative changes. *Id*. (citing Exhibit 2F). A computed tomography scan of Plaintiff's cervical spine on the same date, showed degenerative changes at C5-C6 and C6-C7. *Id*. However, the ALJ noted that "by July 18, 2018, [Plaintiff] no longer complained of back pain, neck pain, or gait problems." *Id*. (citing Exhibit 19F).

Regarding mental impairments, the ALJ noted that there were no records from mental health providers but that Plaintiff received treatment from his primary care provider, Terence Grewe, D.O., for bipolar disorder and anxiety, among other chronic conditions, and that the record includes various mental status examinations and medication management as part of Plaintiff's treatment by Dr. Grewe and during his hospital stay.

After reviewing Plaintiff's statements and medical evidence in the record, the ALJ concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [Plaintiff's] statements about the intensity, persistence, and limiting effects of these symptoms are inconsistent with the objective

evidence." (R. 20). In explaining this conclusion, the ALJ cited additional medical opinion evidence.

The ALJ addressed Medical Source Statements completed by Dr. Grewe on June 21, 2018, in which Dr. Grewe opined that Plaintiff cannot stand or walk for two hours in an eight-hour workday or lift more than ten pounds, and would require unscheduled breaks. The ALJ found Dr. Grewe's opinion unpersuasive, explaining that the limitations indicated were inconsistent with objective physical examinations that were "largely within normal limits." *Id*. The ALJ also rejected Dr. Grewe's opinions that Plaintiff has "numerous marked or severe limitations in concentration, social interaction, and adaption [sic]" because it was "not supported by any documented objective psychometric testing." *Id*.

The ALJ considered the opinions of state agency reviewing physicians and psychologists at the initial and reconsideration stages of Plaintiff's claim. *Id*. The ALJ found "persuasive" the opinion of state agency physicians that Plaintiff can perform light exertion work, due to the "limited number of abnormalities" in Plaintiff's physical exams. *Id*. However, with respect to Plaintiff's mental RFC, the ALJ found that the longitudinal medical evidence supported severe impairments and additional functional limitations beyond those found by the state agency psychologists. *Id*.

### 4. Past Relevant Work

Citing the VE's testimony, the ALJ found that, with the RFC identified above, Plaintiff is unable to perform his past relevant work as a drill press operator. (R. 21). Accordingly, the ALJ proceeded to step five.

### E. Step Five

At step five, the ALJ determined that, given Plaintiff's age, education, work experience, and RFC, the Medical-Vocational Guidelines support a finding that Plaintiff is not disabled, whether or not he has transferable job skills. (R. 22).[2] Citing the VE's hearing testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform:

> • *small product assembler,* light exertion, unskilled, SVP level 2, of which 190,000 such jobs exist in the national economy, DOT # 706.684-022;
>
> • *packer/inspector,* light exertion, unskilled, SVP level 2, of which 160,000 such jobs exist in the national economy, DOT # 559.687-074;
>
> • *conveyor line worker,* light exertion, unskilled, SVP level 2, of which 75,000 such jobs exist in the national economy, DOT # 524.687-022.

*Id*. The ALJ also noted that Plaintiff's RFC is limited to no overhead reaching bilaterally. Although the DOT does not address overhead reaching, the VE stated that, in his professional opinion, based on his experience placing individuals in jobs, the above jobs would remain available even with this limitation. *Id*. The ALJ cited and accepted the above opinion of the VE. *Id*. As such, the ALJ found Plaintiff not disabled at step five. (R. 23).

---

[2] The Medical-Vocational Guidelines (Grids) are matrices of four factors: physical ability, age, education, and work experience. The Grids set forth rules that identify whether jobs requiring specific combinations of those factors exist in significant numbers in the national economy. *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting *Heckler v. Campbell,* 461 U.S. 458, 461-62, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)). When all factors coincide with the criteria of a Grid rule, then the ALJ can rely on the Rule to establish the existence of jobs at step five of the evaluative sequence. 20 C.F.R. Pt. 404, Subpt. P. App. 2, 200(b).

IV.     **Discussion**

Plaintiff raises various objections to the ALJ's assessment of Plaintiff's severe and non-severe impairments at step two, the ALJ's evaluation of Plaintiff's subjective statements, and the ALJ's reliance on the VE's testimony to support her findings at step five.

A.      **Step Two**

Plaintiff argues that the ALJ erred at step two by failing to find that Plaintiff's "post-pneumonia issues," seizures, and right rotator cuff injury are severe impairments. (Doc. 14 at 3-6). Generally, an ALJ's "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). This is so because an ALJ "is required to evaluate the combined impact of a claimant's impairments throughout the disability determination process." *Williams*, 844 F.2d at 756 (citing 42 U.S.C. § 423(d)(2)(C)); *see also Allman*, 813 F.3d at 1330.

Here, the ALJ found Plaintiff has severe impairments of bipolar disorder and degenerative disc disease of the lumbar and cervical spine. Accordingly, under *Allman*, the ALJ's determination that other impairments were not severe is not reversible error.[3]

---

[3]     Plaintiff argues that the ALJ's purported errors at step two materially affected his analysis at subsequent steps. However, these arguments should be addressed in connection with the relevant steps of the ALJ's analysis.

11

### B.     RFC Determination

Among other objections to the ALJ's RFC determination, Plaintiff argues that the record before the ALJ was incomplete, because it did not include evidence from Plaintiff's hospitalization beginning on April 1, 2019 and his subsequent additional hospitalization and treatment. Plaintiff contends that the Commissioner failed to adequately consider some 1,200 pages of evidence Plaintiff submitted for consideration by the Appeals Council. These records begin with Plaintiff's hospital admission with pneumonia starting on April 1, 2019—before the April 11, 2019 ALJ hearing—and including records of Plaintiff's hospitalizations and post-hospitalization treatment, including occupational therapy. (*See* R. 29-1230 (the "Supplemental Evidence"); *see also* R. 2 (identifying Supplemental Evidence as "treatment records from Hillcrest Medical Center dated May 3, 2019 to June 21, 2019 (187 pages and 229 pages); treatment records from Hillcrest Medical Center dated April 1, 2019 to May 5, 2019 (187 pages); and treatment records from Hillcrest Medical Center dated April 1, 2019 to April 26, 2019 (151 pages, 186 pages, 187 pages, and 75 pages)").

The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). Here, the Supplemental Evidence apparently was not made part of the record until after Plaintiff appealed the ALJ's decision issued on July 8, 2019. In such circumstances, the Commissioner may be required to take new evidence

12

into consideration if the evidence is shown to be material and there is good cause for the claimant's failure to submit the evidence earlier. *See* 42 U.S.C. § 405(g); *see also* R. 2 (stating that Appeals Council "will review your case when . . . [w]e receive additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must also show there is a reasonable probability that the additional evidence would change the outcome of the decision. You must show good cause for [not] submitting it earlier"). Evidence is material to the determination of disability "if there is a reasonable possibility that [it] would have changed the outcome." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (citing *Wilkins v. Sec'y, Dep't of Health & Hum. Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)).

The Supplemental Evidence reflects that Plaintiff was hospitalized with pneumonia from April 1, 2019 to April 26, 2019. (R. 447). Plaintiff was then in rehabilitation until April 29, 2019. *Id*. During his hospitalization, Plaintiff exhibited a hematoma on the right thigh. (*See* R. 125). The hematoma later became infected and developed into an abscess. *Id*. In June 2019, Plaintiff visited the emergency department and was admitted to the hospital for treatment of the abscess. (R. 259). Plaintiff also experienced swelling of the right knee, which a provider stated was most likely reactive swelling. (R. 125).

The Appeals Council concluded that the Supplemental Evidence "does not show a reasonable probability that it would change the outcome of the decision." *Id*. The Appeals

Council therefore "did not exhibit this evidence." *Id*. However, the Appeals Council's decision provides no further discussion or explanation for this conclusion. (*See* R. 1-7).[4]

The Court agrees with Plaintiff that the Supplemental Evidence merits additional consideration. These records include significantly probative evidence that could reasonably have affected the ALJ's findings and Plaintiff's RFC determination. For example, on June 10, 2019, Plaintiff presented to the emergency department for evaluation of swelling and drainage to the right thigh. (R. 265). Plaintiff reported experiencing swelling for several weeks, with drainage and worsening pain. *Id*. Providers noted a large intramuscular abscess in the anterior right thigh musculature. (R. 264, *et seq*.) Plaintiff was also assessed with sepsis, which was deemed likely to be secondary to the abscess. (R. 274). A provider's notes during Plaintiff's hospital stay indicate "severe debility prior to" Plaintiff's hospitalization. (*See, e.g.*, R. 311, 323). Plaintiff was admitted for inpatient treatment and further evaluation, and spent another eleven days in the hospital in June 2019. (R. 273). Upon discharge, Plaintiff was assessed as needing skilled nursing facility care. (*See* R. 307).

On June 17, 2019, a provider noted that Plaintiff's pain was "not controlled." (R. 312). Plaintiff's right knee showed swelling and had a limited range of motion. (R. 312, 317). A provider noted a "large joint effusion and diffuse subcutaneous edema about the knee and distal thigh" on Plaintiff's right leg. (R. 339-340). Plaintiff was "able to perform

---

[4] The Commissioner does not contend that the Supplemental Evidence fails under the other criteria for additional evidence—*i.e.*, evidence that is new and relates to the period on or before the date of the hearing decision. (R. 2). Based on a review of the Supplemental Evidence, the undersigned is satisfied that it meets these additional criteria.

pre-gait activity including marching in place, lateral weight shifts, RLE [right lower extremity] stepping forward/backward" but "had difficulty with weight acceptance through RLE." *Id*. The same day, a provider noted that Plaintiff was "relying heavily on BUE's [bilateral upper extremities] for support" and was "[u]nable to tolerate weight" due to weakness in the right lower extremity. (R. 344).

Plaintiff also had an occupational therapy evaluation on June 17, 2019. The provider noted that Plaintiff was "greatly limited in all ADLs requiring that he be in a standing position," and showed deficits in "Bed mobility, Transfers, Standing balance, Sitting balance, Strength UE, Gross motor coordination UE, Endurance, At risk for skin breakdown, Safety, Impaired personal ADLs." (R. 346). The occupational therapy notes also noted a high risk for falls and observed that Plaintiff had been using a cane for short distance ambulation and a walker for longer distance ambulation. (R. 347). Plaintiff required "[m]aximal" assistance with dressing and toileting, and his standing ADLs were "greatly limited." *Id*.

Having reviewed the Supplemental Evidence, the Court finds a reasonable possibility exists that, had the ALJ considered these records, she could have reached a different outcome. For example, in discussing the objective medical evidence, the ALJ concluded that Plaintiff had stopped complaining of back or neck pain or problems walking by July 18, 2018. (R. 19). The ALJ also noted twice in her decision that Plaintiff's examination records consistently reflected a normal gait. (R. 16, 19). Further, in assessing the severity of Plaintiff's symptoms, she noted that Plaintiff had displayed normal balance and reflexes. (R. 19). However, the ALJ's decision does not reflect consideration of the

Supplemental Evidence from Plaintiff's hospital stays less than one year later, which document difficulties with balancing while standing and walking and indicate that Plaintiff used assisted devices for walking.[5] Given that the ALJ found Plaintiff is capable of performing light work, which requires standing and/or walking up to six hours in an eight-hour workday, the Supplemental Evidence merits consideration and discussion in the ALJ's conclusions regarding Plaintiff's ability to stand and walk.

Additionally, the ALJ cited Plaintiff's self-reported ADLs, such as housework and lawn mowing, in finding his symptoms are not as severe as alleged. (R. 19). For this finding, the ALJ cited Plaintiff's Function Report, which is undated but apparently became part of the record well before Plaintiff's hospitalization in April 2019. (R. 1456-1463).[6] However, during Plaintiff's June 2019 hospital stay, an occupational therapist noted that Plaintiff was "greatly limited in all ADLs requiring that he be in a standing position" and had deficits in numerous areas, including standing balance, sitting balance, upper extremity strength, gross motor coordination in the upper extremities, and endurance. (R. 346).

It is not clear whether the ALJ would have reached the same conclusions regarding the intensity, persistence, or functionally limiting effects of Plaintiff's symptoms, had the Supplemental Evidence been considered as part of the record. However, because these records address some of the very issues that the ALJ relied on in evaluating the evidence,

---

[5]     The ALJ also noted that there were "no indications of edema or deformities." (R. 19). However, the Supplemental Evidence documents an episode of swelling in Plaintiff's knee. (R. 125, 330, 379).

[6]     A Third-Party Function Report from Plaintiff's wife is dated September 9, 2017. (R. 1448).

the undersigned finds that a reasonable possibility exists that the additional records could have changed certain findings made by the ALJ. As such, the Appeals Council erred in failing to remand the case for the ALJ to consider Plaintiff's hospitalization and post-hearing treatment records.

Additionally, these records conceivably could have impacted the ALJ's determination that, although Plaintiff was hospitalized with pneumonia at the time of the hearing, "there is no indication that this level of severity would last for twelve months." (R. 16). For example, following Plaintiff's hospitalization with pneumonia, a provider noted that he was "[d]ebilitated from prolonged hospitalization" and that "[g]iven [Plaintiff's] prolonged hospitalization with intubation," he was at "high risk for deterioration and will need over 2 midnight for IV antibiotics and hemodynamic monitoring with risk for sepsis and respiratory failure." (R. 231).

Accordingly, reversal and remand are warranted for further consideration of the Supplemental Evidence as it relates to Plaintiff's disability claim. Because the Court finds that the ALJ should be required to reassess Plaintiff's RFC in connection with the Supplemental Evidence, the Report and Recommendation does not address Plaintiff's other arguments concerning the RFC determination and subsequent steps of the ALJ's decision. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## V. Conclusion and Recommendation

The undersigned finds the ALJ's decision does not reflect adequate consideration of all significantly probative evidence, and therefore **recommends** that the decision of the Commissioner finding Plaintiff not disabled be **reversed** and **remanded** for further proceedings consistent with this Report and Recommendation.

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation within 14 days. Any such objections must be filed on or before July 26, 2021.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule," which provides that the failure to make timely objections to the magistrate judge's findings or recommendations waives appellate review of factual and legal questions. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 12th day of July, 2021.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge